IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GPMM, INC., a Nebraska Corporation; <br><br> Plaintiff, <br><br> vs. <br><br> BRENDA THARP, an individual; and NATALIE KOTRC, an individual; <br><br> Defendants. | 8:19-CV-128 <br><br> MEMORANDUM AND ORDER |

    This case comes before the Court on Plaintiff's Motion for Partial Judgment on the Pleadings, Filing 38, and Defendants' Motion to Amend Answer, Filing 40. For the reasons set forth herein, the Court denies both motions.

## I.     BACKGROUND[1]

    Plaintiff, GPMM, Inc., (GPMM) operates a wedding and catering business called Save the Date. Filing 16 at 2. Defendants, Brenda Tharp and Natalie Kotrc, are former employees of Save the Date who left to form their own company, Elegant Edge Events. Filing 16 at 6-7. GPMM alleges Tharp and Kotrc used Save the Date's contacts and resources in order to grow their new business. Filing 16 at 4-5. In particular, Tharp used Save the Date's Wedding Wire and The Knot accounts to divert potential client inquiries to the new company by forwarding them from Save the Date's email to her private email account. Filing 16 at 4. Tharp then deleted records of the potential client inquiries from the Save the Date email account. Filing 16 at 5. GPMM also alleges Tharp and Kotrc represented Save the Date at a bridal fair in October 2018 and used the opportunity to solicit business for their new company. Filing 16 at 5-6.

---

[1] Additional background can be found in the Court's prior orders ruling on motions to dismiss at Filing 15 and Filing 21.

1

GPMM filed suit against Tharp and Kotrc, alleging breach of the duty of loyalty, tortious interference with business relationships, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, violation of the Nebraska Junkin Act relating to unlawful restraint of trade, and violation of the federal Computer Fraud and Abuse Act (CFAA). *See generally* Filing 1; Filing 16. On May 1, 2019, Defendants filed a Motion to Dismiss, alleging GPMM had failed to state a claim under the CFAA, 18 U.S.C. § 1030. Filing 7 at 1-6. On October 3, the Court granted Defendants' Motion to Dismiss but granted GPMM leave to file an amended complaint in order to remedy the pleading deficiencies. Filing 15 at 13.

On October 14, 2019, GPMM filed its Amended Complaint. Filing 16. Following an unsuccessful second motion to dismiss, Defendants filed their Answer to the Amended Complaint on March 10, 2020. Filing 22. The scheduling order provided that the last date to amend the pleadings was April 30, 2020, and neither party sought an extension of that deadline. Filing 26 at 1. As is relevant here, in their Answer, Defendants admitted paragraphs 34, 35, and 36 of the Amended Complaint. *See* Filing 22 at 3 ("Defendants admit the allegations of Paragraph[s] 34 through 37."). Those paragraphs state:

> 34. Specifically, on October 9, 2018, while employees of GPMM, Tharp and Kotrc represented Save the Date at a large bridal fair hosted by Wedding Essentials at the Mid-America Center in Council Bluffs, Iowa. GPMM paid the registration fee for the bridal fair in order to promote Save the Date Catering.
>
> 35. While at the bridal fair, Tharp and Kotrc collected the names of 219 potential clients. Normally, Save the Date could expect to book 10% of such client contacts. None of these potential clients booked events or tastings with Save the Date.
>
> 36. On information and belief, instead of booking tastings and events for Save the Date while at the bridal fair, Tharp and Kotrc solicited business for Elegant Edge Events.

Filing 16 at 5-6.

## II. DISCUSSION

GPMM moves for partial judgment on the pleadings as to Count 1 (breach of the duty of loyalty), Count 2 (tortious interference with business relationships), and Count 4 (unjust enrichment) of its Amended Complaint. Filing 38. In response, Tharp and Kotrc have filed a Motion to Amend their Answer, which GPMM opposes. Filing 40. Tharp and Kotrc also separately oppose the Motion for Partial Judgment on the Pleadings. Filing 43. The Court will address the motion to amend and the motion for judgment in turn.

### A. Motion to Amend Answer

*1. Standard of Review*

There are two procedural rules at play, and the parties disagree about their applicability to Defendants' motion seeking to amend its answer. First, Federal Rule of Civil Procedure Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a) further states that "[t]he court should freely grant [such] leave when justice so requires." *Id.* This standard is construed liberally but "plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)). A district court may appropriately deny the movant leave to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks and citations omitted).

Second, Federal Rule of Civil Procedure Rule 16(b) guides the district court on how to issue and modify pretrial scheduling orders and provides that "[e]xcept in categories of actions

exempted by local rule, the . . . judge . . . must issue a scheduling order." Fed. R. Civ. P. 16(b)(1). The order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The scheduling order "may be modified *only for good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). Additionally, Rule 16(d) states that a pretrial scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).

*2. Analysis*

Tharp and Kotrc argue the Court need only apply the lenient standard found in Rule 15(a) instructing courts to give leave to amend freely "when justice so requires." Filing 40 at 3 (quoting Fed. R. Civ. P. 15(a)). GPMM argues that the Court must apply Rule 16(b)'s "good cause" standard in ruling on Defendants' motion to amend because it was filed after the deadline for amendments set forth in the scheduling order. Filing 44 at 3-4. The Court agrees it must apply Rule 16's good-cause standard to Defendants' untimely request to amend and finds they have failed to demonstrate good cause to modify the scheduling order's deadlines.

"The interplay between Rule 15(a) and 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). When a motion for leave to amend is filed outside the district court's scheduling order, the moving "party *must* show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (emphasis added). Showing "good cause" is more demanding than the standard in Rule 15. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (stating that "[a]s regards case management orders, . . . the Federal Rules set a less forgiving standard" than the liberal construction given to requests to amend as a matter of course). As another court within the circuit aptly put it, "Rule 16 opens the door to Rule 15" with respect to motions to amend brought outside the scheduling order deadline.

4

*Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Min. 2019). That is, Rule 16(b)'s "good cause" analysis is meant to determine whether the *scheduling order* should be modified; the Rule 15(a) analysis then "resolves whether the *complaint* can be *amended*." *Id.* (emphasis in original). Only after the movant has shown good cause to modify the scheduling order under Rule 16(b) may the court consider whether the amendment is permitted under Rule 15(a). *See Sherman*, 532 F.3d at 716 (citing with approval cases which first required a good-cause showing before proceeding to consider whether an amendment is proper under Rule 15(a)). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Id.* at 716-17 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).

In this case, Tharp and Kotrc have failed to demonstrate good cause to extend the deadlines set forth in the scheduling order in order to allow them to amend their Answer. The scheduling order provided that the last date to amend the pleadings was April 30, 2020.[2] Filing 26 at 1. Tharp and Kotrc did not seek to amend their answer until December 15, 2020, nearly eight months later, and then only in response to GPMM's motion seeking partial judgment based on their answer responses. *See* Filing 40. This lengthy delay and the fact that Defendants did not discover the supposed error independently but only sought to amend once GPMM moved for partial judgment do not demonstrate diligence in seeking to modify the scheduling order. *See Sherman*, 532 F.3d at 716-17 ("The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.").

Furthermore, Defendants' purported reason for needing to amend does not demonstrate diligence or establish good cause. Tharp and Kotrc blame an alleged error in drafting their Answer.

---

[2] Saying April 30, 2020, was the deadline for Defendants to amend is generous. The order provides a deadline only for Plaintiff to move to amend pleadings, presumably because Defendants represented to the Court that they did not intend to amend any pleadings at all and thus did not require such a deadline.

They claim they "never had any intent to admit the allegations" in paragraphs 34 through 36 and state "[i]t is unknown how the mix up occurred and the responses changed from 'deny' as originally drafted, to 'admit.'" Filing 40 at 2. This explanation strains plausibility. First, the Answer as filed groups together Paragraphs 34 through 37, not just paragraphs 34 through 36. *See* Filing 22 at 3 ("Defendants admit the allegations of Paragraph [sic] 34 through *37*." (emphasis added)). Thus, it is unclear how only the responses to paragraphs 34 to 36 would be incorrect due to an inadvertent drafting mistake. Furthermore, Defendants seem to concede that portions of these paragraphs are, in fact, true, such as the statement in paragraph 34 that Tharp and Kotrc attended the bridal shower at all. *See, e.g.*, Filing 44-2 at 6-7 (Tharp admitting she attended the bridal fair in question). It is therefore not apparent how an answer that should be "admit in part, deny in part" was changed to fully "admit" by a mere typo.[3] Lastly, even assuming the incorrect responses were inadvertently included in the answer as Defendants claim, such a mistake does not constitute good cause to extend the scheduling order's deadlines. *See Edge in Coll. Preparation, LLC v. Peterson's Nelnet, LLC*, No. 8:16CV559, 2018 WL 1732157, at *2 (D. Neb. Apr. 10, 2018) (citation omitted) ("To the extent that the failure to [discover the need for amendment] in the time allotted was simply a careless mistake, this . . . is insufficient to establish good cause.").

Only where Tharp and Kotrc are found to have good cause to modify the scheduling deadlines will the Court move on to the Rule 15 analysis regarding whether the amendment should be allowed. *See Sherman*, 532 F.3d at 717. Because the Court finds Tharp and Kotrc have not demonstrated good cause to modify the scheduling order under Rule 16, further discussion under

---

[3] The clarity of Defendants' argument in this respect is further impeded by their failure to file a proposed Amended Answer which would allow the Court to see the specific changes they suggest making. This is in violation of the Court's local rules and an additional basis for denial of their motion. *See* NECivR 15.1(a) ("A party who moves for leave to amend a pleading . . . must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments").

Rule 15 is unnecessary. For these reasons, Defendants' Motion for Leave to Amend Answer, Filing 40, is denied.

### B. Motion for Partial Judgment on the Pleadings

GPMM alleges that Tharp and Kotrc's admissions to paragraphs 34, 35, and 36 of the Amended Complaint mean there is no material issue of fact as to its causes of action for breach of duty of loyalty, tortious interference with business relationships, and unjust enrichment. Filing 39 at 3-9. The Court addresses each claim in turn.

1. *Standard of Review*

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). When reviewing a Rule 12(c) motion, the Court must "view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)); *Poehl*, 528 F.3d at 1096. To survive such a motion, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also In re Pre-Filled Propane Tank Antitrust*

*Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (noting the plausibility standard from *Twombly* and *Iqbal* "applies to Rule 12(c) motions").

    2. *Breach of the Duty of Loyalty*

GPMM first argues judgment on the pleadings is warranted on its claim for breach of the duty of loyalty. Filing 39 at 5. GPMM argues that by attending the bridal fair while employed by GPMM but using the information from the fair to solicit customers for Elegant Edge Events, Defendants "took advantage of their position as agents of GPMM" and "compete[d] against their own employer." Filing 39 at 5. In response, Defendants first argue that the pleadings do not support partial judgment in GPMM's favor because even though Defendants admit attending the bridal fair and soliciting customers for their new business venture in Paragraphs 34, 35, and 36 of their Answer, they later entered a denial to the paragraphs of the Amended Complaint which set forth the count of breach of the duty of loyalty. Filing 43 at 1. Defendants next argue that even if their Answer can be read as admitting they attended the bridal fair to solicit their own clients, the fact that GPMM cannot demonstrate it would have otherwise booked those potential clients means no breach of the duty of loyalty occurred. Filing 43 at 10-11.

"Under Nebraska law, it is a generally recognized principle that an employee owes a duty of loyalty to his employer during the course of his employment . . . ." *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 786 (8th Cir. 2017) (quoting *MeccaTech, Inc. v. Kiser*, No. 8:05CV570, 2008 WL 1820800, at *5 (D. Neb. Apr. 21, 2008)). This means that "[d]uring employment, an employee has a duty not to compete with his employer concerning the subject matter of the employment." *Dick v. Koski Prof'l Grp., P.C.*, 307 Neb. 599, 666, 950 N.W.2d 321, 370 (2020), *opinion modified on denial of reh'g on other grounds*, 308 Neb. 257 (2021). "Such conduct might include soliciting customers of the employer or forming one's own competing

8

business while still working for the employer." *W. Plains, L.L.C.*, 870 F.3d at 786 (citing *Buell, Winter, Mousel & Assocs., Inc. v. Olmsted & Perry Consulting Eng'rs, Inc.*, 227 Neb. 770, 420 N.W.2d 280, 283 (1988)); *see also Prof'l Bus. Servs. Co. v. Rosno*, 268 Neb. 99, 117, 680 N.W.2d 176, 189 (2004) ("[An employee] is not . . . entitled to solicit customers for [a] rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business." (emphasis omitted) (quoting Restatement (Second) of Agency § 393 at 218 cmt. e (1958))).

The Court finds that disputed facts in the pleadings preclude the entry of judgment at this stage of the proceedings. While Tharp and Kotrc's admissions at Paragraphs 34 through 36 tend to strongly indicate they may have breached their duty of loyalty, they later deny certain key allegations of the Amended Complaint. For example, Tharp and Kotrc deny Paragraphs 60 through 63 of the Amended Complaint, Filing 16 at 9, which sets forth the specific cause of action for breach of the duty of loyalty. Filing 22 at 5. In particular, they deny having acted for their own benefit to GPMM's detriment or of having diverted potential clients from GPMM. Filing 22 at 5. Thus, the material facts which would support a finding Defendants breached their duty of loyalty are disputed. Given these somewhat contradictory assertions in the pleadings, it is apparent this contested factual issue is inappropriate for a Rule 12(c) motion and more properly suited for resolution on summary judgment or by the fact-finder at trial when evidence can be presented and weighed.

  3. *Tortious Interference with Business Relationships*

GPMM next argues it is entitled judgment on the pleadings for its claim for tortious interference with business relationships. Filing 39 at 5-8. Defendants argue the pleadings fail to

establish GPMM had a valid business relationship with any of the potential clients who attended the bridal fair and judgment is therefore inappropriate. Filing 43 at 5-8.

Under Nebraska law, the elements of tortious interference with a business relationship or expectancy are:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Huff v. Swartz*, 258 Neb. 820, 825, 606 N.W.2d 461, 466 (2000) (quoting *Koster v. P & P Enters.*, 248 Neb. 759, 764, 539 N.W.2d 274, 278–79 (1995)). This Court has previously stated that while "Nebraska law is not fully developed on this point, it is true that proving a business expectancy [is] 'valid' will generally require proof that there was a reasonable likelihood or probability of a business relationship." *Crabar/GBF, Inc. v. Wright*, No. 8:16-CV-537, 2019 WL 4016122, at *15 (D. Neb. Aug. 26, 2019) (citing *Lucas v. Monroe Cnty.*, 203 F.3d 964, 978 (6th Cir. 2000); *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 221-22 (Minn. 2014)); *see also Hogan v. Cox Commc'ns, L.L.C.*, No. 8:04CV368, 2005 WL 3358922, at *6 (D. Neb. Dec. 9, 2005) ("Liability under a tortious interference theory cannot be predicated upon speculation, conjecture, or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis." (citation omitted)). Applying a similar principle under Arkansas law, the Eighth Circuit has found that where a plaintiff submitted only "statistical evidence" that it was likely but not certain to have the business expectancy in question, such evidence "d[oes] not describe a precise, certain, concrete, or definite business expectancy" such as would survive a motion to dismiss for failure to state a claim. *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 819 (8th Cir. 2015).

10

Here, the pleadings do not unequivocally establish that GPMM had a business relationship or expectancy with the attendees of the bridal fair. The Amended Complaint itself establishes these attendees were mere "potential clients." Filing 16 at 5. GPMM does not plead that it is certain it would have secured any one of the attendees as a customer in the absence of Defendants' alleged interference. Rather, GPMM claims it normally "could expect to book 10% of such client contacts" but did not book any from the fair in question. Filing 16 at 5. This statistical probability does not establish "a precise, certain, concrete, or definite business expectancy." *Stonebridge Collection, Inc.*, 791 F.3d at 819. Accordingly, judgment on the pleadings on GPMM's claim for tortious interference with business relationships in Count 2 is inappropriate.

4. *Unjust Enrichment*

Lastly, GPMM seeks judgment on the pleadings for its claim of unjust enrichment. Filing 39 at 8-9. It again points to Defendants' admitted actions in attending the bridal fair as entitling it to judgment on this count. Filing 39 at 8-9. Defendants argue the pleadings do not support judgment on this claim because "GPMM makes no allegation whatsoever that Defendants received any money to which Plaintiff GPMM was entitled." Filing 43 at 9.

To recover under a theory of unjust enrichment, "the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." *Kanne v. Visa U.S.A. Inc.*, 272 Neb. 489, 501, 723 N.W.2d 293, 302 (2006) (citing *Kissinger v. Genetic Eval. Ctr. Inc.*, 260 Neb. 431, 618 N.W.2d 429 (2000)).

As with its tortious-interference claim, the speculative nature of GPMM's interest in the business of the bridal fair attendees precludes the entry of judgment on the pleadings for unjust enrichment. The pleadings do not concretely demonstrate that any money Tharp and Kotrc may

11

have obtained as a result of the bridal fair should rightfully be paid to GPMM. *See Kanne v. Visa U.S.A. Inc.*, 272 Neb. at 501, 723 N.W.2d at 302 (stating unjust enrichment is appropriate only where the money defendant received ought to be paid to the plaintiff in justice and fairness); Restatement (Third) of Restitution and Unjust Enrichment § 44 (2011) (stating unjust enrichment applies only to situations involving "conscious interference with a claimant's *legally protected* interests" (emphasis added)). As set forth above, GPMM does not allege it would have booked any of the bridal fair attendees as a client; it merely asserts a statistical likelihood of the business it expected from such an event. Such a speculative claim, construed in Defendants' favor as the Court is required to do, does not establish GPMM's undisputed right to judgment on the pleadings on its claim for unjust enrichment found in Count 4.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion to Amend Answer should be denied. The Court determines that judgment on the pleadings must be denied as to GPMM's claims for breach of the duty of loyalty, tortious interference with business relationships, and unjust enrichment. Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Partial Judgment on the Pleadings, Filing 38, is denied; and
2. Defendants' Motion to Amend Answer, Filing 40, is denied.

Dated this 4th day of February, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge
